Filed 11/18/25  In re Meki G. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re MEKI G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | D085507 |
| Plaintiff and Respondent, | (Super. Ct. No. J212475) |
| v. | |
| MEKI G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.

In 2009, a jury found Meki G. guilty of the first degree premeditated murder of Oceanside Police Officer Dan Bessant (Pen. Code, § 187, subd. (a)), which he committed while lying in wait (*id.*, § 189), and one count of assault

with a firearm on Oceanside Police Officer K.P., a peace officer engaged in the performance of her duties (*id.*, § 245, subd. (d)(1))—offenses Meki perpetrated when he was 17 years old. The jury returned true findings on allegations that Meki intentionally and knowingly killed a peace officer engaged in the performance of his duties (*id.*, § 190.2, subd. (a)(7)); knowingly murdered a peace officer engaged in the performance of his duties (*id.*, § 190, subd. (b)); intentionally killed a police officer (*id.*, § 190, subd. (c)(1)); personally used a firearm during the commission of a murder of a peace officer engaged in the performance of his duties (*id.*, § 190, subd. (c)(4)); committed the crimes for the benefit of, at the direction of, and in association with a criminal street gang (*id.*, § 186.22, subd. (b)(1)); intentionally and personally discharged a firearm, causing death (*id.*, § 12022.53, subd. (d)); and personally used a firearm (*id.*, § 12022.5, subd. (a)). Meki was sentenced to state prison for 61 years plus life without the possibility of parole (LWOP). Our court affirmed the judgment, in part, and ordered the trial court to strike a stayed gang enhancement.

In 2016, while Meki was serving his sentence, the trial court granted a petition for writ of habeas corpus filed by Meki pursuant to *Miller v. Alabama* (2012) 567 U.S. 460, and *People v. Gutierrez* (2014) 58 Cal.4th 1354. The court vacated Meki's LWOP sentence, remanded the matter for resentencing, and stayed the remand. The court then conditionally reversed the judgment of conviction pending the outcome of a transfer hearing under Welfare and Institutions Code section 707, and certified Meki's case to the juvenile court for a transfer hearing.[1]

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

After a transfer hearing that began on January 6, 2025, and ended on January 13, 2025, the juvenile court transferred Meki's case to criminal court. Meki timely appealed the order transferring his case from the juvenile court to criminal court under section 707.

Meki's appointed counsel filed a brief raising no arguable issues and requesting that we exercise our discretion to review the record for potential issues under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). We have independently reviewed the record and find no arguable issue that would result in a modification or reversal of the transfer order. Therefore, we affirm.

I

BACKGROUND

A. *The Shootings*

On December 20, 2006, at about 6:15 p.m., Oceanside Police Officer K.P. initiated a traffic stop of a vehicle with expired registration tags in an area known for its high gang activity. Shortly after, 25-year-old Oceanside Police Officer Dan Bessant arrived on the scene to assist K.P.

At about 6:30 p.m., a group of three to six males, including Meki, fired multiple gunshots at the officers in rapid succession. Meki and the other males were members or affiliates of the Deep Valley Blood (DVB) gang. A .22 caliber bullet entered Bessant's chest cavity, punctured his heart, passed through his liver, and came to a rest in his chest cavity, killing him on the scene.

Meki was taken into custody and initially denied involvement. However, he later told detectives he had been drinking beer in the park on the day of the shooting, saw the officers, and was scared they would arrest him for being intoxicated, so he pulled out a rifle and a handgun and fired at

3

the officers simultaneously. A few days later, Meki again changed his story and told a detective he fired a rifle at officer Bessant, while two other individuals fired handguns at the officers. Meki claimed they opened fire because officers had been harassing him and his friends.

B. *The Probation Report*

Prior to the transfer hearing, the probation department filed a report with the court. The probation report summarized an interview with Meki, in which he stated he was adopted by his grandfather at a young age. Meki said he was an "impulsive, insecure young follower," and he "was hostile to anyone other than [his] gang." Meki joined DVB when he was in sixth grade and, as a teenager, he did the gang's "dirty work" like storing firearms and beating people up. He admitted shooting the rifle that killed officer Bessant, but claimed he had "changed [his] life to honor" officer Bessant. According to Meki, he dropped out of his gang in 2009, but still got into three prison fights between 2009 and 2012. At that point, he instituted a "no violence policy," and he is now committed to non-violence at all costs. Meki also reported that he passed his General Education Development (GED) examination in 2012.

The probation report described a psychological evaluation of Meki performed by Dr. Kristina J. Malek in June 2024. Dr. Malek recommended that Meki's case be kept under the jurisdiction of the juvenile court. She opined that Meki's pursuit of peer acceptance, drug use, and gang involvement stemmed largely from his ongoing brain development and environment as an adolescent; his transition away from violence at the age of 22 showed he was on a positive trajectory; he had only one sustained juvenile delinquency finding for possession of marijuana for sale prior to the fatal attack on the officers; he did not receive adequate intervention measures after his prior juvenile delinquency offense; and, while the gravity of his

4

commitment offenses could not "be overstated," the circumstances of the offenses, Meki's mental and emotional development as an adolescent, and Meki's personal risk factors warranted consideration as well.

The probation officer also determined Meki was amenable to care under the jurisdiction of the juvenile court. The probation officer noted Meki was unlikely to receive services, training, or treatment under the jurisdiction of the juvenile court due to his age (35 years old), but "it appear[ed] he [had] obtained necessary skills to be law abiding" if he were to be released into the community. The probation officer stated that Meki's commitment to non-violence "may not mean much when you weigh it with his actions of murder, [but] it is more than most inmates are capable of[,] and Meki would most likely be an exception to the norm in this regard." The probation officer emphasized that Meki had a relapse prevention plan in place, and he learned several valuable life skills and obtained vocational training in custody.

C. *The Transfer Hearing*

At the transfer hearing, the prosecution elicited testimony from Dr. Blake Carmichael, a clinical psychologist. Dr. Carmichael reviewed Meki's records and prepared a report regarding the suitability of a transfer to criminal court. Dr. Carmichael opined that Meki's offenses reflected criminal sophistication because he intentionally targeted law enforcement, he fired upon officers despite his awareness of the harms associated with firearms, he used a high-power scoped rifle, and he fled the crime scene and disposed of evidence after the crimes. Dr. Carmichael stated that he had concerns about Meki's ability to rehabilitate within the time remaining for juvenile court jurisdiction because Meki had numerous risk factors, he likely would be released from custody immediately and subject to only two years of supervision, and juvenile programming is directed towards adolescents, not

5

adults like Meki.  Dr. Carmichael stated that Meki's prior attempts at rehabilitation also weighed in favor of a transfer because he was on juvenile probation when he perpetrated the shootings, and he continued to associate with DVB for some time after his detention.  Dr. Carmichael testified that the severe gravity of the crimes weighed in favor of a transfer as well.

The prosecution also elicited testimony from an investigator with the San Diego County District Attorney's Office, who discussed several aspects of the DVB gang, including its size (60 members and associates as of 2006), its rivalries (any Crip gang sects), the violent acts of its members, and the fact it was subject to gang abatement efforts undertaken by the Oceanside Police Department in 2006.  Further, the prosecution elicited testimony from K.P., who testified that Meki's crimes caused her to suffer from post-traumatic stress disorder and anxiety, and officer Bessant's father, who described his son's passion for his family and the community.

The defense elicited testimony from the probation officer for Meki's case.  The probation officer, who had never written a section 707 transfer report before he prepared Meki's report, discussed the opinions and recommendations from his report.  He stated that a different probation officer who had been assigned to Meki's case before him seemed to believe that the case should be transferred to criminal court.  The defense also elicited testimony from Dr. Malek about adolescent brain development, the effect of trauma on the development and functioning of the brain, and the findings expressed in her psychological evaluation of Meki.  Finally, two of Meki's family members testified about his upbringing in the care of his physically abusive grandfather, the influence of gangs in his neighborhood, and the growth and maturity he has shown in custody.

6

D. *The Juvenile Court's Ruling*

At the conclusion of the transfer hearing, the juvenile court found the prosecution proved, by clear and convincing evidence, that Meki was not amenable to rehabilitation while under the jurisdiction of the juvenile court. The court found that four of the five factors governing a transfer determination under section 707—namely, the degree of criminal sophistication exhibited by the minor, whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, the success of previous attempts by the juvenile court to rehabilitate the minor, and the circumstances and gravity of the offenses—supported a transfer to criminal court. Meanwhile, the court found that one factor—the minor's previous delinquent history—supported a retention of jurisdiction in the juvenile court. Because the court found Meki was not amenable to rehabilitation while under the jurisdiction of the juvenile court, the court granted a transfer of Meki's case to criminal court.

II

DISCUSSION

Appellate counsel has filed a *Wende* brief indicating that counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to independently review the record for error as mandated by *Wende, supra*, 25 Cal.3d 436, and *Anders, supra*, 386 U.S. 738. Counsel identified one potential issue to assist us in our review: whether the court erred by disregarding Dr. Malek's expert testimony as not credible and/or giving inadequate weight to the evidence regarding Meki's successful post-conviction rehabilitation when determining, based on the totality of the circumstances, it was necessary to grant the People's transfer motion.

7

We have reviewed the entire record as required by *Wende* and *Anders*, and considered the potential issue identified by Meki's counsel.  We conclude there is no arguable issue that would result in a reversal or modification of the order.  We therefore affirm the order.  Competent counsel has represented Meki in this appeal.

III

DISPOSITION

The transfer order is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

BUCHANAN, J.

8
